IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-02546-PAB-BNB

GREGORY STEWART HUBLER,

Plaintiff,
v.

RUSTY LANDER,

Defendant.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

This matter arises on two motions:

1. Defendant's **Motion to Dismiss** [Doc. #38, filed 05/15/2009]; and

2. Plaintiff's **Motion to Submit Supplemental Pleading and Additional Request for Relief in the Form of a Preliminary Injunction** [Doc. #47, filed 06/08/2009].

I respectfully RECOMMEND that the defendant's Motion to Dismiss be GRANTED. I further RECOMMEND that the plaintiff's motion be DENIED.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). I cannot act as an advocate for a *pro se* litigant, however, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537

F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

## II.   BACKGROUND

The plaintiff filed his Amended Prisoner Complaint (the "Amended Complaint") on January 14, 2008 [Doc. #14]. The Amended Complaint asserts three claims for relief. Claim One alleges that prison officials improperly characterized the plaintiff's criminal conviction. Claim Two alleges that prison officials changed the plaintiff's sex offender classification without due process. Claim Three alleges that prison officials retaliated against the plaintiff for filing a habeas corpus action. Claims One and Three have been dismissed [Doc. #20].

The Amended Complaint contains the following allegations regarding Claim Two:

1.   The plaintiff pled guilty to Pandering of a Child in violation of section 18-7-403(b), C.R.S. *Amended Complaint*, p. 4, ¶ 1. He is currently incarcerated by the Colorado Department of Corrections ("DOC"). Id. at p. 2, ¶ 1.

2.   Prior to filing this action, the plaintiff was undergoing treatment in the DOC's Sex Offender Treatment and Monitoring Program ("SOTMP"). Id. at p. 3, ¶ 7.

3.   The plaintiff was terminated from SOTMP because he maintained that he was not guilty of pandering of a child. Id.

4.   The plaintiff was given a procedural due process hearing prior to being terminated from SOTMP. Id. at ¶ 9; p. 5 at Claim Two (caption).

5. The plaintiff's sexual offender sub-code was "repeatedly changed over the course of years" without any prior notice or hearing. Id. at p. 3, ¶ 1. For example, on or about January 2004 "plaintiffs [sic] sub-code was changed from R to D . . . without any notice or hearing." Id. In October 2005 the plaintiff "had begun to earn 10 days a month [of earned time credit] because the code was correctly designated R." Id. at ¶ 4. Later, in what the plaintiff characterizes as a "retaliatory move," his "sub-code changed back to D."[1] Id. And in July 2007, the plaintiff's "sub-code was changed from 'D' waitlisted to 'P.'" Id. at ¶ 11.

6. Finally, the plaintiff contends that under Beebe v. Heil, 333 F. Supp.2d 1011, 1016-17 (D. Colo. 2004), "[a] prisoner has a liberty interest in maintaining his sub-code at R because it allows for full earned time credit of 10 days a month." Id. at ¶ 2; p. 5, ¶ 3.

### III.  ANALYSIS

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

#### A.  Defendant's Motion to Dismiss

The defendant asserts that he is entitled to qualified immunity. Qualified immunity shields government officials sued in their individual capacities from liability for civil damages where their conduct, when committed, did not violate "clearly established statutory or

---

[1] The plaintiff's retaliation claim has been dismissed [Doc. #20].

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I consider two factors.  I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right.  In addition, I must inquire whether the right was clearly established at the time of the violation.  Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas, 172 F.3d 736, 745 (10th Cir. 1999).[2]

The plaintiff claims that the defendant violated his procedural due process rights by changing his sexual offender sub-classification from "R" to "D" without affording him notice or a hearing.  Sex offender classifications are set forth in the DOC's Administrative Regulation ("AR") 700-19.  *Motion to Dismiss*, Ex. A.[3]  Pursuant to AR 700-19, all inmates are rated on a five level Sexual Violence Scale.  Id. at § IVA.  The ratings range from S1 (inmates with no indication of sex offense behavior) to S5 (inmates with a judicial determination of sexual offense).  Id.

Inmates classified between S3 and S5 are subject to recommendation for sex offense specific treatment.  Id. at § B.  Those inmates are given sub-classifications which identify the

---

[2]The order in which I may consider these factors is discretionary.  Pearson v. Callahan, __ U.S. __, __, 129 S. Ct. 808, 818 (2009); Manzanares v. Higdon, 2009 WL 2430643 *3 n.6 (10th Cir. Aug. 10, 2009).

[3]I may take judicial notice of administrative regulations.  Fed.R.Evid. 201.

SOTMP recommendations.  There are nine sub-classes.  Id.  The three sub-classifications applied to the plaintiff, and relevant here, are "R," "P," and "D."  *Amended Complaint*, p. 3, ¶¶ 1, 2, and 11.  An "R" sub-classification means that the inmate is "Ready" and currently meets the SOTMP participation requirements.  *Motion to Dismiss*, Ex. A, § B.  The "P" sub-classification stands for "Pending" and means that the inmate meets the SOTMP participation requirements but has previously been terminated, removed from the waiting list for cause, dropped out of treatment, or has refused SOTMP placement.  Id.  Sub-classification "D" stands for "Does Not Meet Criteria" because "[t]he offender does not meet the SOTMP participation requirements."  Id.

Inmates are eligible for up to four days of earned time when participating in SOTMP.  *AR 550-12*, § IVH2.  A sub-classification code of "D" or "P" renders an inmate ineligible for this earned time.  Id. at § IVH2a.

The Due Process Clause prohibits the government from depriving a person of life, liberty, or property without prior notice and an opportunity for a hearing.  Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542 (1985).  "To invoke the protections of procedural due process, a plaintiff must establish the existence of a recognized property or liberty interest."  Setliff v. Memorial Hosp. of Sheridan County, 850 F.2d 1384, 1394 (10th Cir. 1988) (citing Board of Regents of State Colleges v. Roth, 408 U.S. 564, 569 (1972)).

In the context of a sex offender classification, the courts have found a liberty interest where labeling a prisoner as a sex offender (*i.e.*, the initial assignment of the S classification) *is coupled with* the "coercive element" of conditioning parole eligibility or receipt of good time credits on completion of a sex offender treatment program.  Beierle v. Zavares, 215 F.3d 1336, 2000 WL 757725, *4 (10th Cir. June 12, 2000); Chambers v. Colorado Dept. of Corrections, 205

F.3d 1237, 1242 (10th Cir. 2000) (stating that the DOC had not created a liberty interest in the plaintiff's *not* being classified as a sex offender; the liberty interest was implicated when the DOC removed the plaintiff's earned time credits). See also Gwinn v. Awmiller, 354 F3d 1211, 1216 (10th Cir. 2004) (stating that damage to an inmate's reputation by labeling him as a sex offender, without more, is not sufficient to implicate the Due Process Clause).

The process required to classify a prisoner as a sex offender has been described as follows:

> An inmate who has been convicted of a sex crime in a prior adversarial setting, whether as the result of a bench trial, jury trial, or plea agreement, has received the minimum protections required by due process. Prison officials need do no more than notify such inmate that he has been classified as a sex offender because of his prior conviction for a sex crime.

Neal v. Shimoda, 131 F.3d 818, 831 (9th Cir. 1997) (cited with approval in Chambers, 205 F.3d at 1243). By contrast:

> [A]n inmate who has not previously been convicted of a sex offense may be classified as a sex offender for purposes of a prison treatment program only if the prison affords him the procedural protections . . . set forth in [Wolff v. McDonnell 418 U.S. 539 (1974)]: notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. . . . Additionally, in order to comport with due process, there must be some evidence to support the hearing panel's decision . . . and the decisionmaker must be impartial.

Gwinn, 354 F.3d at 1218-19.

The plaintiff is classified as an S-5 sex offender, *Complaint*, Ex. 3. He does not challenge that classification. *Amended Complaint*, p. 5; *Plaintiff's Brief in Opposition of Defendant's Motion to Dismiss* [Doc. #41], p. 2. Instead, he claims he was denied procedural

due process when the defendant changed his sex offender sub-classification from R to D. Assignment of sub-classifications is not stigmatizing, and it is the kind of discretionary action that traditionally falls within the responsibility of prison administrators. See Meachum v. Fano, 427 U.S. 215, 225 (1976)(finding that not every deprivation resulting from a prison administrator's exercise of discretion is subject to judicial review); Templeman v. Gunter, 16 F.3d 367, 369-70 (10th Cir. 1994)(holding that prison officials may deny earned time credits to inmates in administrative segregation and that discretionary decision does not implicate a liberty interest requiring a due process hearing).  Consequently, due process does not require notice or a hearing prior to changing an inmate's sex offender sub-classification. Id.

The plaintiff cites Beebe v. Heil, 333 F. Supp.2d 1011, 1016-17 (D. Colo. 2004), in support of the argument that he should have a liberty interest in not having his sub-classification changed without notice and a hearing.  The Beebe case provides no guidance here.  In Beebe, the court held that an inmate sentenced under section 18-3-305(1) of the Colorado Sex Offender Lifetime Supervision Act had a liberty interest in obtaining sex offender treatment and was entitled to a hearing prior to being terminated from SOTMP.  The plaintiff here was not sentenced under the Colorado Sex Offender Lifetime Supervision Act, *Amended Complaint*, p. 4, ¶ 1, and he admits that he received a hearing prior to being terminated from SOTMP. Id. at ¶¶ 1, 9; p. 5, caption of Claim Two.

The Motion to Dismiss should be granted.[4]

---

[4]Because I find that the plaintiff has failed to state a claim for violation of his due process rights, I do not address whether the constitutional right was clearly established at the time of the alleged violation.  In addition, because I find that the plaintiff has failed to state a claim, I do not address the defendant's remaining arguments.

### B.  Plaintiff's Motion to Submit Supplemental Pleading and Additional Request for Relief in the Form of a Preliminary Injunction

The plaintiff seeks to supplement his pleadings "to include defendant's conduct of changing the sub-code from R to D in September of 2008." *Motion to Submit Supplemental Pleading and Additional Request for Relief in the Form of a Preliminary Injunction* [Doc. #47], p. 1.  Because I find that due process does not require a notice or a hearing prior to changing an inmate's sub-classification code, the plaintiff's request is moot.

The plaintiff also seeks an injunction prohibiting the defendant from using the "D" sub-classification code during the pendency of this action because he "should not be losing earned time." *Motion to Submit Supplemental Pleading and Additional Request for Relief in the Form of a Preliminary Injunction* [Doc. #47], p. 2.

Injunctive relief is a drastic remedy and is granted only in cases where the right to relief is clearly established.  Goldammer v. Fay, 326 F.2d 268, 270 (10th Cir. 1964).  The burden is on the movant to establish his right to the relief requested.  Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1185 (10th Cir. 1975).  To obtain a preliminary injunction under Rule 65(a), the plaintiff must show that (1) he will suffer irreparable injury unless the injunction issues; (2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and
(4) there is a substantial likelihood that the moving party will eventually prevail on the merits.  Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir.1980).  The plaintiff's right to relief must be clear and unequivocal.  Penn, 528 F.2d at 1185.

The following kinds of preliminary injunctions are disfavored: (1) those that disturb the status quo; (2) those that are mandatory as opposed to prohibitory; and (3) those that afford the movant substantially all the relief he may recover at the conclusion of a full trial on the merits. SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096 1098-99 (10th Cir. 1991). "[A]ny preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004). The plaintiff seeks both a mandatory injunction and an injunction that would disturb the status quo.[5] Therefore, he "must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of the harms." Id. at 976.

As discussed above, the plaintiff cannot prevail on the merits of his claim. Accordingly, his request for injunctive relief must fail.

Moreover, to the extent the plaintiff seeks to shorten his release date through restoration of his earned time credits, he is not challenging the conditions of his confinement; he is challenging the execution of his sentence. A challenge to the execution of a sentence is properly brought under 28 U.S.C. § 2241. McIntosh v. Untied States Parole Commission, 115 F.3d 809, 811 (10th Cir. 1997). An action pursuant to section 1983 is the "proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life." Preiser v.

---

[5] Mandatory injunctions "affirmatively require the nonmovant to act in a particular way." SCFC, 936 F.2d at 1099. Injunctions that disturb the status quo alter the parties existing relationship. Id. at 1100. "The status quo is not defined by the parties' existing *legal rights*; it is defined by the *reality* of the existing status and relationships between the parties, regardless of whether the existing status and relationships may ultimately be found to be in accord or not in accord with the parties' legal rights." Id. (emphasis in original).

Rodriquez, 411 U.S. 475, 499 (1973). An action pursuant to section 1983 is not the proper remedy to challenge the fact or length of an inmate's custody. Id.[6]

## IV. CONCLUSION

I respectfully RECOMMEND that Defendant's Motion to Dismiss [Doc. #38] be GRANTED.

I further RECOMMEND that Plaintiff's Motion to Submit Supplemental Pleading and Additional Request for Relief in the Form of a Preliminary Injunction [Doc. #47] be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.

---

[6]I note, however, that the United States Constitution does not create a liberty interest in earned time credits. Wolff v. McDonnell, 418 U.S. 539, 557 (1974). Therefore, the plaintiff's liberty interest, if it exists, must be created by state law. State law may create a liberty interest if it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

Colorado law has not created a liberty interest in earned time credits. Section 17-22.5-405, C.R.S., provides that "[e]arned time, not to exceed ten days for each month of incarceration or parole, *may* be deducted from the inmate's sentence...." C.R.S. § 17-22.5-405(1) (emphasis added). The use of the term "may" provides a discretionary basis regarding an award of earned time. Thus, the decision to grant or deny earned time credit under section 17-22.5-405 lies within the discretion of the Department of Corrections, and the DOC's failure to award earned time credits does not result in an atypical and significant hardship in relation to the ordinary incidents of prison life.

In addition, under Colorado law, earned time credits are applied to determine parole eligibility, not to determine a mandatory release date. Meyers v. Price, 842 P.2d 229, 231-32 (Colo. 1992). The DOC's decision not to award earned time credits cannot, therefore, implicate a liberty interest. See Sandin 515 U.S. at 487.

10

In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated November 12, 2009.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge